IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-95 |
| NOELIO PAZ-VALDEZ, | : | |
| a/k/a "Moelio Paz-Valdez," | | |
| a/k/a "Noelio Osbil Paz Valdez," | | |
| a/k/a "Janson Hilberto," | | |
| a/k/a "Janson G. Estrada Aguilar," | | |
| a/k/a "Hanson Estrada Aguilar" | | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Noelio Paz-Valdez has pleaded guilty to illegally reentering the United States after deportation, in violation of Title 8, United States Code, Sections 1326(a) and (b)(2). This offense is the latest of the defendant's recurrent violations of federal law, who previously has been deported from the United States on two other occasions. After each of these prior deportations, the defendant reentered this country illegally. In addition, the defendant has engaged in criminal activity while living unlawfully in the United States. Given the defendant's history of flouting the law, and for the reasons further discussed below, the government recommends a sentence of incarceration within the applicable guideline range of 15 to 21 months' imprisonment followed by a period of supervised release.

### Background

A.   **Factual Background**

The defendant is a native and citizen of Guatemala. He has been deported from the United States on two previous occasions: October 12, 2007 and May 12, 2010.

On May 30, 2003, the defendant was encountered by immigration officers in Missouri.

He conceded that he was in the United States illegally. On July 8, 2003, the defendant was released from immigration custody on a $1,500 bond. On October 6, 2003, the defendant failed to appear for an immigration hearing in Missouri, and an order of removal was entered in absentia. The defendant was a fugitive for almost four years until he was arrested by police in Ohio on September 26, 2007 for driving without a license.

On October 12, 2007, the defendant was removed from the United States to Guatemala. Prior to the removal, immigration officials served the defendant with a notice warning him that he was prohibited from entering, attempting to enter, or being in the United States for a period of ten years from the date of his deportation. The notice also stated that the defendant was required to request and obtain permission from the Attorney General to reapply for admission to the United States following his deportation and that illegal reentry was a crime under 8 U.S.C. §1326(a), punishable by two to twenty years' imprisonment.

On February 1, 2010, the defendant was encountered by Department of Homeland Security ("DHS") officials in Fairfax County, Virginia. The defendant admitted that he was a citizen of Guatemala, that he had previously been deported from the United States, and that he did not apply to the Attorney General for permission to re-enter. On April 1, 2010, the defendant pleaded guilty to illegal reentry after deportation, in violation of 8 U.S.C. §1326(a), in the Eastern District of Virginia. He was sentenced to time-served (35 days of imprisonment). On May 12, 2010, the defendant was deported for the second time to Guatemala. Prior to this second removal, the defendant was warned about the consequences of unlawfully reentering the United States.

Despite these warnings, the defendant nevertheless reentered the United States. On

January 17, 2017, the defendant turned himself in to DHS officials in Leesport, Pennsylvania. Apparently, the defendant was known to immigration officers due to two traffic incidents.

In addition to the defendant's immigration offenses, he has sustained other criminal convictions while unlawfully living in the United States. On September 14, 2006, Paz-Valdez was arrested in Fairfax County, Virginia for assault on a family member. According to the police report, the defendant was having a verbal argument with his wife, Sandra Morales-Diaz, that escalated into violence and the defendant physically assaulted Ms. Morales-Diaz. Police observed scratch marks on her neck, blood coming from her nose, and bruising on her arm and hand. When the police arrested the defendant, they also observed a "Tennessee identification card" that had a photograph of the defendant, but a different name. The defendant admitted that the identification "wasn't real" and that he purchased it for work purposes. On December 3, 2009, the defendant was convicted of assault on a family member and sentenced to 30 days' imprisonment. The term of imprisonment was suspended.

On November 1, 2009, the defendant was arrested in Fairfax County, Virginia for driving while intoxicated. Fairfax County police officers observed the defendant driving a car without the headlights on. The officer flashed high beams to notify the defendant to turn on the headlights. In response, the defendant "revved" the engine and sped past police, fled across an opposing lane of traffic, drove up onto a sidewalk, veered back across the road onto a grassy median, struck a "One Way" sign, which landed on top of the defendant's car and then fell in front of the police car. The defendant then drove the car over a curb before eventually coming to a complete stop. Police administered three field sobriety tests, all of which the defendant failed. The defendant also lied to the police about his identity when he provided an identification card

with the name "Janson Gilberto Estrada Aguilar". On January 14, 2010, the defendant was convicted of forgery and sentenced to 2 years' imprisonment. The term of imprisonment was suspended. After the defendant was sentenced for this matter, he was remanded to immigration custody and was deported on May 12, 2010 to Guatemala for the second time.

### B. Procedural History

On February 16, 2017, a federal grand jury returned a one-count indictment charging defendant Noelio Paz-Valdez one count of illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2), all arising from his reentry into the United States following his deportation to Dominican Republic. On April 25, 2017, the defendant entered an open guilty plea to the charge in the indictment.

## Sentencing Calculation

### A. Statutory Maximum Sentence

The statutory maximum penalty for a violation of 8 U.S.C. § 1326(a), when enhanced under subsection (b)(2), because his removal was after a conviction for a felony, is 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows: The base offense level for the illegal re-entry offense is 8, pursuant to U.S.S.G. § 2L1.2(a). The defendant committed the instant offense after sustaining a conviction for a felony that is an illegal reentry offense, and the base offense level is increased by 4 levels, pursuant to U.S.S.G. § 2L1.2(b)(1)(A). After the defendant was deported from the United States for the first

time, he engaged in criminal conduct resulting in a felony conviction, and his offense level is increased by 4 levels, pursuant to U.S.S.G. § 2L1.2(b)(3)(D).  As a result of his guilty plea, the offense level is decreased by 3 levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a)-(b).  The total offense level is, therefore, 13.  The defendant has a total of three criminal history points, placing him in criminal history category II.  The recommended guideline range is 15 to 21 months' imprisonment.

The government also requests a period of supervised release to follow the term of imprisonment.  U.S.S.G. § 5D1.1(c) provides that supervised release should ordinarily not be imposed if the defendant is a deportable alien.  However, Application Note 5 provides that the Court can consider imposing a term of supervised release if the Court finds it would provide an added measure of deterrence and protection, based on the circumstances of the case.  Supervised release is appropriate for this defendant because he presents a high risk of recidivism, as he has already been deported twice from the United States and has continued to unlawfully reenter the United States and commit other criminal acts while in the United States.

**<u>Analysis of Sentencing Factors</u>**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) indicates that the Court should accept the calculation of the advisory guidelines as set forth above, review all other factors, and impose a sentence of imprisonment above the guidelines.

The Supreme Court has declared:  "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.'"  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Thus, the Sentencing Guidelines remain an

indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing factors set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). Consideration of the sentencing factors in the context of defendant's repeated illegal entries into this country and his further lawlessness while here, support a sentence within the advisory guidelines range.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant.

The defendant has been deported twice from the United States. Each time, he was warned that he could not return without official permission. Each time, he came back anyway. The defendant could have elected to remain in his native country or to seek admission to the United States through lawful means. He failed to do so. Instead, he chose to reoffend again and again. In addition, while living unlawfully in the United States, the defendant has sustained criminal convictions. On December 3, 2009, the defendant was convicted of assault on a family

6

member after he assaulted his wife.  On January 14, 2010, the defendant was convicted of forgery and sentenced to 2 years' imprisonment, which was suspended.  The facts relating to this conviction stem of from an arrest for driving while intoxicated, in which the defendant reacted to a police officer's attempt to inform him that his car's headlights were not on by speeding past police into an opposing lane of traffic, driving up onto a sidewalk, striking a "One Way" Sign, and jumping over a curb before he came to a complete stop.

Given this backdrop, a significant sentence of imprisonment is now called for.  A sentence within the 15-21 month guideline range followed by a term of supervised release would appropriately account for both the nature of the offense and the history and characteristics of the defendant.

### B. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

For similar reasons to those stated above, a substantial sentence of imprisonment is also necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.  The defendant's repeated offenses are indicative of a personal disregard for the laws of the United States.  By the same token, the flagrancy with which the defendant committed his multiple repeat offenses undermines respect for the law more generally.  Notably, when the defendant was released on bond the first time he was encountered by DHS officials in 2003, he failed to appear for his immigration hearing and was a fugitive for almost four years until he was arrested in 2007.

When a person is seen to repeatedly violate the law without suffering meaningful consequences—whether the law in question deals with immigration or another substantive area—the public's respect for the rule of law is eroded.  Here, time and again, after being caught for

7

illegally entering this country, the defendant continues to illegally reenter the United States. This conduct evinces a disrespect for the law that could encourage others to engage in similar criminal behavior. It is time that the defendant's pattern of disrespect for the law comes to an end. That can only be achieved by sending a clear message that his criminal conduct is unacceptable. A guideline sentence followed by a term of supervised release would affirm that the defendant's offense is one to be taken seriously, promote respect for the law, and provide for just punishment.

> **C. The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

As noted above, neither the defendant's deportations nor his prior sentences for criminal convictions have proved sufficient to deter the defendant from continued criminal conduct. The need to afford adequate deterrence, therefore, supports the application of a meaningful sentence now. If the past is a guide, only a substantial sentence will convince the defendant that he ought to refrain from further criminal conduct in the future. The sentence should be significant enough, therefore, to serve as a reminder to the defendant and others similarly situated that this type of criminal conduct has serious consequences.

Likewise, although the instant offense is not a crime of violence, the Court may consider the defendant's past conduct in the context of protecting the public. The defendant's conviction for assault on a family member as well as his conviction for forgery, in which the underlying conduct involved driving while intoxicated, raises concerns that the defendant could pose a risk to the public in the future. For this reason, the government has long had a policy of prioritizing individuals with felony convictions for immigration enforcement. Here, the defendant is a convicted felon whose past criminal conduct placed public safety at risk. He has lawfully been removed from the United States on two occasions, and each time he has illegally returned. In the

absence of a substantial sentence to deter him from future violations, there is no reason to think his conduct this time will be different. The need to provide for deterrence and to protect the public, therefore, is best supported by a sentence within the guideline range followed by a term of supervised release.

    **D. The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The defendant does not report requiring special educational or vocational training, medical care, or other correctional treatment. A sentence within the guideline range followed by a term of supervised release would not interfere with any of these goals.

    **E. The guidelines and policy statements issued by the Sentencing Commission.**

There are no guidelines or policy statements in the Sentencing Guidelines which dictate against a sentence within the advisory guideline range followed by a term of supervised release.

    **F. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The Sentencing Guidelines are designed to avoid unwarranted sentence disparities among defendants who have committed similar offenses. The application of a sentence within the applicable advisory guideline range followed by a term of supervised release, therefore, will avoid unwarranted sentence disparities and will promote the goal of consistency that underlies the Guidelines.

**Conclusion**

For all the reasons set forth above, all of the appropriate considerations of sentencing pursuant to U.S.C. § 3553(a) favor the imposition of a sentence of imprisonment within the advisory guidelines range followed by a period of supervised release.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney


/s Katherine Driscoll
KATHERINE DRISCOLL
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic filing upon:

Maranna Meehan, Esq.<br>
Federal Community Defender Office<br>
Eastern District of Pennsylvania<br>
The Curtis Center Bldg<br>
601 Walnut Street, Suite 540 West<br>
Philadelphia, PA 19106

<u>/s  Katherine Driscoll</u>
KATHERINE DRISCOLL
Assistant United States Attorney

DATE: July 10, 2017