# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| V. | : | CRIMINAL NUMBER 17-095-1 |
| | : | |
| | : | |
| NOELIO PAZ-VALDEZ | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Noelio Paz-Valdez submits this sentencing memorandum and respectfully requests the Court impose a sentence below the uncontested advisory range of 15 to 21 months. A sentence below the advisory range would serve the goals of sentencing. The defense respectfully suggests a modest variance of twelve months and one day is an appropriate sentence that is sufficient in this case but not greater than necessary to achieve the goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a).

Mr. Paz-Valdez came to the attention of immigration authorities as a result of a traffic stop in Reading, Pennsylvania in January 2017. At that time, he gave a false name, that of his brother because he feared getting arrested.[1] A short time later, he learned immigration authorities were looking for him. He decided to surrender. He feared his brother would suffer the consequences for his deception. Mr. Paz-Valdez turned himself in to the immigration office on January 17, 2017 and was taken into custody on that date.

---

[1] Mr. Paz-Valdez wishes the Court to know that he has previously used only one false name. The other variations of names listed on page 2 of the PSR appear to be misspellings of Mr. Paz-Valdez's true name and his brother's name.

Noelio Paz-Valdez is 35 years old.  He is from Retalhuleu in southwest area of Guatemala.  His parents, though divorced, both reside in Retalhuleu along with two of his five siblings.  He comes from a family of very meager finances.  The family home is Guatemala is a three room cinderblock structure with no running water.  He attended school until the third grade.  After leaving school when he was approximately 6 or 7 years old, he worked cutting trees alongside his father.  He earned the Guatemalan equivalent of $2 to $3 per day.  Mr. Paz-Valdez has two siblings who reside in Reading and one sibling who lives in Virginia.  Mr. Paz-Valdez was in his early 20's when he came to the United States for the first time.  He came to find work that paid a living wage and to escape the violence he witnessed and experienced firsthand in Guatemala.  Mr. Paz-Valdez was severely beaten by a gang in Guatemala and was bed ridden for nearly two months.  He described the event as something that occurs with regularity in Guatemala.  He has four children ages 12, 11, 3 and 6 months.  His two oldest children reside in Virginia.  Mr. Paz-Valdez is currently in a relationship with Rosa Emilia Rivera.  They have two very young children, ages 3 and 6 months.  Ms. Rivera lives in Reading and works with Mr. Paz-Valdez's brother at the roofing company.  She was previously at home taking care of the children until Mr. Paz was taken into immigration custody.

While in the United States for more than eleven years, Mr. Paz-Valdez worked for several different companies doing various construction and roofing jobs.[2]  His primary source of income has come from roofing and siding jobs at Chico's Construction, a subcontractor for Kemper Systems.  During this time, he was helping to support his impoverished parents in

---

[2] Immigration records reflect Mr. Paz-Valdez was arrested in 2003 at his place of employment- Metropolitan Siding and roofing in Fairfax, Virginia along with several other undocumented individuals who were also taken into immigration custody.

Guatemala.

Mr. Paz-Valdez knows and accepts that he will be deported to Guatemala again after serving whatever sentence this Court imposes. He described Guatemala as a very dangerous country with rampant crime. Nevertheless, he understands the inevitability and would rather have his liberty in Guatemala than remain incarcerated and unable to work and support his parents.

I.     **APPLICATION OF THE STATUTORY FACTORS TO THIS CASE**

A sentence of a year and one day represents a modest variance but one that is sufficient but not greater than necessary. This is a non-violent offense. Mr. Paz-Valdez will be deported upon completion of his sentence and will likely spend several weeks in immigration custody awaiting deportation. The Court can consider that his motive for committing this offense was to reunite with his family and work to help support other family members and does not stem from malice, greed or gratuitous violence.

Mr. Paz-Valdez is well aware that if he illegally reenters the United States again, he will be subject to another prosecution and additional incarceration. While it's true that he has twice returned illegally following deportation and faced prosecution, the sentence he faces in this case is significantly greater than 35 days—the federal sentence he previously served for the same offense. A sentence of a year and a day provides sufficient deterrence.

It does not appear that Mr. Paz-Valdez is in need of any educational or vocational training, nor medical care that would warrant a sentence within the advisory range. Such educational and vocational programs are generally unavailable to inmates with immigration

detainers.[3]

Lastly, the public will be protected from future criminal acts by the defendant because he will remain in custody before ultimately being removed to Guatemala. Mr. Paz-Valdez's prior convictions are arguably somewhat remote- having occurred in 2006, 2007 and 2010. Notably, he surrendered himself to immigration when he learned the authorities were looking for him to avoid causing problems for his brother. His criminal history and conduct do not support a sentence within the advisory range to meet the statutory goal of protecting the public from future crimes of the defendant.

## II. **CONCLUSION**

For all the reasons cited herein, as well as any which become apparent to the Court at the sentencing hearing, Mr. Paz-Valdez respectfully seeks a modest variance of twelve months and one day.

Respectfully submitted,

*/s/Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

---

[3] The presence of an immigration detainer will limit access to programs available to similarly-situated United States citizens, including literary and English as a Second Language programs, as similarly-situated United States citizens. 28 C.F.R. § 544.51(b) ("Generally, inmates under orders of deportation, exclusion, or removal may participate in an institution's occupational education program if Bureau resources permit after meeting the needs of other eligible inmates"); 28 C.F.R. § 544.41(a)(3).

# CERTIFICATE OF SERVICE

      I, Maranna J. Meehan, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of the Defendant's Sentencing Memorandum, by electronic notification upon Katherine Driscoll, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

                                                */s/Maranna J. Meehan*
                                                MARANNA J. MEEHAN
                                                Assistant Federal Defender

DATE:       July 17, 2017